**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MICHAEL G. ROWE and LAB RAT PRODUCTIONS, INC.,<br><br>       Plaintiffs,<br><br> - against -<br><br>DISCOVERY COMMUNICATIONS, LLC and DISCOVERY TALENT SERVICES, LLC,<br><br>       Defendants. | Case No.: 1:25-cv-04616-VSB-GWG<br><br>Oral Argument Requested |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**DISCOVERY COMMUNICATIONS, LLC AND**
**DISCOVERY TALENT SERVICES, LLC'S MOTION TO DISMISS**

WEIL, GOTSHAL & MANGES LLP
Theodore E. Tsekerides
Camilla Brandfield-Harvey
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Phone: (212) 310-8218
Fax: (212) 310-8007
theodore.tsekerides@weil.com
camilla.brandfield-harvey@weil.com

*Attorneys for Defendants Discovery*
*Communications, LLC and Discovery Talent*
*Services, LLC*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND.................................................................................................... 3

LEGAL STANDARD.............................................................................................................. 6

ARGUMENT........................................................................................................................... 7

    I.       Plaintiffs' Claims with Regard to Video-on-Demand Viewings Through MVPD Offerings Are Precluded by the Unambiguous Terms of the Agreement.................................................................................................. 7

    II.     Viewings of the Program on Discovery Apps Accessed Through A Third Party Are Covered by Section 17 For Which Plaintiffs Have Already Been Paid .................................................................................................... 10

    III.    Plaintiffs' Bald Allegations That Discovery Breached Section 16(e) Should Also Be Dismissed................................................................................ 14

    IV.    Plaintiffs' Claim for Breach of Guarantee Fails by Necessity............................. 15

CONCLUSION...................................................................................................................... 15

CERTIFICATE OF COMPLIANCE ...................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Signature, Inc. v. Moody's Invs. Servs., Inc.*,
  698 F. Supp. 3d 628 (S.D.N.Y. 2023)........................................................................................14

*Anthracite Cap., Inc. v. MP-555 W. Fifth Mezzanine, LLC*,
  2005 WL 1155418 (S.D.N.Y. May 17, 2005), *aff'd*, 165 F. App'x 875 (2d Cir.
  2005) ..............................................................................................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................6, 14

*Benex LC v. First Data Merch. Servs. Corp.*,
  2016 WL 1069657 (E.D.N.Y. Mar. 16, 2016)..........................................................................10

*Bethlehem Steel Co. v. Turner Constr. Co.*,
  141 N.E.2d 590 (N.Y. 1957)........................................................................................................7

*Postlewaite v. McGraw-Hill, Inc.*,
  411 F.3d 63 (2d Cir. 2005)...........................................................................................................13

*Cap. Access Servs. Inc. v. Direct Source Seafood, LLC*,
  2018 WL 3093967 (S.D.N.Y. June 22, 2018) (Broderick, J.), *aff'd*, 767 F.
  App'x 157 (2d Cir. 2019).............................................................................................................9

*Clalit Health Servs. v. Israel Humanitarian Found.*,
  2004 WL 2199505 (S.D.N.Y. Sept. 29, 2004).........................................................................13

*Condor Cap. Corp. v. CALS Inv'rs, LLC*,
  118 N.Y.S.3d 29 (N.Y. App. Div. 1st Dep't 2020) ...................................................................6

*Crowley v. VisionMaker, LLC*,
  512 F. Supp. 2d 144 (S.D.N.Y. 2007)........................................................................................8

*Edwards v. Sequoia Fund, Inc.*,
  938 F.3d 8 (2d Cir. 2019)..............................................................................................................6

*Goldman v. Metro. Life Ins. Co.*,
  841 N.E.2d 742 (N.Y. 2005).........................................................................................................7

*GTS Indus. S.A. v. S/S "Havtjeld"*,
  887 F. Supp. 531 (S.D.N.Y. 1994), *aff'd sub nom. GTS Indus. S.A. v. S/S
  "Havtjeld"*, 68 F.3d 1531 (2d Cir. 1995) ................................................................................13

*Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
530 F. Supp. 3d 447 (S.D.N.Y. 2021).................................................................9

*Howard v. Howard*,
740 N.Y.S.2d 71 (N.Y. App. Div. 2d Dep't 2002) ...............................................7

*Jill Stuart Asia LLC v. LG Fashion Corp.*,
2019 WL 4450631 (S.D.N.Y. Sept. 17, 2019).....................................................10

*Landmark Ventures, Inc. v. Wave Sys. Corp.*,
2012 WL 3822624 (S.D.N.Y. Sept. 4, 2012), *aff'd*, 513 F. App'x 109 (2d Cir.
2013) .................................................................................................................13

*Lipper Holdings, LLC v. Trident Holdings, LLC (In re Lipper Holdings, LLC)*,
766 N.Y.S.2d 561 (N.Y. App. Div. 1st Dep't 2003) .............................................6

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*,
906 F.2d 884 (2d Cir. 1990)................................................................................6, 9

*Orozco v. Fresh Direct, LLC*,
2016 WL 5416510 (S.D.N.Y. Sept. 27, 2016).....................................................1

*Reiss v. Fin. Performance Corp.*,
764 N.E.2d 958 (N.Y. 2001)................................................................................10

*Stroll v. Epstein*,
818 F. Supp. 640 (S.D.N.Y. 1993), *aff'd*, 9 F.3d 1537 (2d Cir. 1993) ..................13

*Tillman v. N.Y.C. Dep't of Hum. Res. Admin.*,
2022 WL 874947 (S.D.N.Y. Mar. 24, 2022), *aff'd*, 2023 WL 2770218 (2d Cir.
Apr. 4, 2023) ......................................................................................................15

*In re Trs. Established under the Pooling & Serv. Agreements*,
375 F. Supp. 3d 441 (S.D.N.Y. 2019).................................................................6, 7, 8

*W.W.W. Assocs., Inc. v. Giancontieri*,
566 N.E.2d 639 (N.Y. 1990)................................................................................6, 7, 8

*WestLB AG v. BAC Fla. Bank*,
912 F. Supp. 2d 86 (S.D.N.Y. 2012)...................................................................15

**Other Authorities**

23 Williston on Contracts § 63:22 (4th ed. 2021)..........................................................10

Defendants Discovery Communications, LLC ("DCL") and Discovery Talent Services, LLC (together, "Discovery" or "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Plaintiffs' Complaint in its entirety, with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

**PRELIMINARY STATEMENT**

The Complaint filed by plaintiffs Michael Rowe ("Rowe") and his loan-out corporation Lab Rat Productions, Inc. ("Lab Rat" and collectively with Rowe, "Plaintiffs") should be dismissed based on the clear and unambiguous language of the Participant Agreement, dated January 1, 2020, that governs the parties' relationship (the "Agreement")[1]. The Agreement was carefully crafted to compensate Rowe for specific types of distribution relating to the program *Dirty Jobs* (the "Program"). Through their Complaint, Plaintiffs seek to recover damages to which they are not entitled based on a flawed and tortured interpretation that ignores key provisions of the Agreement and by relying on allegations that cannot stand scrutiny under the contract's clear terms.

Plaintiffs allege two counts of breach relating to Plaintiffs' compensation for, and control over, airings of the Program: breach of contract and breach of a guarantee. Compl. ¶¶ 89–116. Plaintiffs' breach of guarantee claim rises and falls with their breach of contract claim, as Defendant DCL cannot have breached the Agreement's guarantee unless Plaintiffs show that Defendants have defaulted on one or more of their contractual obligations.

---

[1] The Court may consider the Participant Agreement because Plaintiffs' claims are based on this Agreement and it is incorporated by reference in the Complaint. *E.g.*, Compl. ¶ 5; *Orozco v. Fresh Direct, LLC*, 2016 WL 5416510, at *5 (S.D.N.Y. Sept. 27, 2016). A true and correct copy of the Participant Agreement is attached to the accompanying Declaration of Theodore E. Tsekerides, dated August 4, 2025.

1

Plaintiffs assert multiple breach of contract theories concerning video-on-demand viewings of the Program by subscribers to traditional and virtual Multiprogram Distributors[2] (collectively "MVPDs").  Plaintiffs claim that Defendants have failed to compensate them properly for these viewings and have prevented Plaintiffs from exercising their alleged Joint Control rights over this type of exploitation.  *Id*. at ¶¶ 50–88.  According to Plaintiffs, this exclusion from control also violates the covenant of good faith and fair dealing.  *Id*. at ¶ 99.  However, the Agreement unambiguously excludes this type of distribution from the relevant compensation and Joint Control provisions, as Plaintiffs receive compensation for, and Joint Control over, video-on-demand viewings that occur on Third-Party subscription video-on-demand ("SVOD") platforms, not viewings that occur as part of MVPD or virtual MVPD on demand offerings.

Plaintiffs also assert that Defendants have compensated Plaintiffs under the wrong contractual provision for certain viewings of the Program on Discovery apps.  *Id*. at ¶ 64.  The Agreement compensates Plaintiffs differently based on whether the viewing occurs on a direct-to-consumer service owned and operated by Discovery (like Discovery+ or HBO Max) or a third-party SVOD platform (like Netflix or Hulu).  Plaintiffs claim that the third-party platform compensation provision should control when a viewing on a Discovery app is *accessed* through a third-party platform, even if the viewer is still watching the Program on a Discovery app.  *Id*. However, this method-of-access distinction is not grounded in the Agreement, and all Discovery app viewings are properly compensated under Section 17 of the Agreement, which covers viewings that occur on services owned and operated by Discovery regardless of how they are accessed.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Complaint.

Plaintiffs further assert that Defendants breached the Agreement by failing to account for linear ratings on virtual MVPDs when calculating royalties owed to Plaintiffs.  *Id*. at ¶¶ 31, 63.  However, the Agreement does not require that royalty statements Discovery sends to Rowe with payment parse out ratings related to exploitation on traditional versus virtual MVPDs, and Plaintiffs provide no factual detail to support their conclusory allegation that the royalties paid to Plaintiffs do not already account for these ratings (which they do).

Defendants have paid Rowe all to which he is entitled under the Agreement and have honored all of their obligations.  Plaintiffs either do not understand the clear terms of the Agreement and the various distributing methods for content, or they are using this litigation to renegotiate the deal they previously struck.  Rather than work with Defendants to address any questions Rowe may have with the accounting provided to him for five years now, Plaintiffs have chosen to make a federal case, literally, out of their grievances.  While it is Plaintiffs' right to commence an action, it is also Defendants' right to obtain a dismissal of the complaint where, as demonstrated below, the clear and unambiguous contractual language bars Plaintiffs' claims as a matter of law.

## FACTUAL BACKGROUND

Rowe hosted the popular television show *Dirty Jobs*, which Discovery began airing on the Discovery linear network and various third-party platforms in 2005.  Compl. ¶¶ 1–2.  The original series ended in 2012, but has since been aired approximately 335 times per year between 2014 and 2023.  *Id.* at ¶ 2.  While previous agreements governed the parties' relationship, the Agreement now governs, among other things, Rowe's compensation for various methods of exploitation of the Program, his limited Joint Control over and contingent compensation for new and old episodes, and copyright and ownership rights.

3

The Agreement is very specific as to the circumstances under which Rowe is to be compensated and what Joint Control, if any, he is to be provided for exploiting the Program. As relevant here, four sections of the Agreement demonstrate that the Complaint must be dismissed.

Section 16 provides Rowe and Lab Rat royalties associated with the linear exploitation of the Program. Agreement at 5. Linear exploitation refers to "a broadcast where a viewer accesses content in accordance with a predetermined programming schedule." Compl. ¶ 44. Commencing on January 1, 2020, through the later of either April 30, 2025 or 12 months after the premiere telecast of the final Initial New Episode, Discovery is to pay Rowe and Lab Rat ratings royalties for any premiere or repeat episode of the Program airing on a DCL Linear Service in the United States (defined in the Agreement as the "Initial Royalty Period"). Agreement at 5. A DCL Linear Service is a "24/7 television programming network owned and/or operated by DCL such that DCL controls all the programming decisions related to such network, including without limitation, the scheduling of the programming that composes the network's linear feeds." *Id.* at 28. The amounts of these royalties coincide with certain Nielsen ratings ranges in the A25–54 demographic. *Id.* at 6. After the end of the Initial Royalty Period, Discovery continues to pay Plaintiffs ratings royalties in perpetuity that are percentages of the Initial Royalty Period rates that become gradually smaller as time passes. *Id.* In simple terms, Section 16 governs Plaintiffs' entitlement to compensation when the program airs on the Discovery Channel or any other cable network owned and operated by Warner Bros. Discovery ("WBD").

In Section 17, Discovery agreed to provide Plaintiffs with royalties for the exploitation of the Program on video-on-demand DCL Digital Platforms. *Id.* DCL Digital Platforms are defined as:

> an Internet-delivered video-on-demand, direct-to-consumer service owned and operated by DCL that provides authenticated or non-authenticated access on a FVOD (i.e., Free Video

on Demand), SVOD or AVOD basis to end-users, such as Discovery GO or Motor Trend On-Demand. A DCL Digital Platform shall not include a third-party digital distribution platform operated by a MVPD, virtual MVPD or any other third party (e.g., Xfinity OnDemand, Hulu, Netflix, HBOMax, Amazon Prime, Disney Plus, Apple Plus, YouTube), including without limitation, any Third-Party SVOD Platform.

*Id.* at 27–28.  Payment for this form of exploitation is based on the number of minutes viewed.  *Id.* at 7.  In simple terms, Section 17 governs Rowe's entitlement to compensation when viewers watch the Program on HBO Max, Discovery+, or any other WBD-owned-and-operated streaming platform.

Section 21 provides the specific and enumerated circumstances under which Plaintiffs are entitled to Joint Control with respect to certain exploitation of the Program.  Agreement at 8.  As to these forms of distribution, prior to entering into any agreements, Discovery is required to provide Plaintiffs with a written summary of the opportunity, along with a reasonable amount of time to accept or reject the opportunity, and Discovery must seek Plaintiffs' written consent before entering into any agreement for an opportunity subject to this Section.  *Id.*  Discovery can engage in preliminary negotiations for opportunities covered by this Section without Plaintiffs' consent.  *Id.*

Finally, Section 22 identifies various forms of exploitation and how Plaintiffs would be compensated in the event of a transaction of the type set forth in this Section.  *Id.* at 9–11.  Relevant here, Section 22(e) governs the distribution of the Program on Third-Party SVOD platforms and makes clear that Third-Party SVOD includes "any SVOD platform operated by a third-party *separate and independently from such third-party's MVPD and/or virtual MVPD offering* and for which DCL receives license fees separate and apart from any affiliate revenue." *Id.* at 9 (emphasis added).  In simple terms, Section 22 governs Plaintiffs' entitlement to compensation when viewers watch the Program on demand on a third-party streaming platform that is not connected to a cable (MVPD or virtual MVPD) subscription.

5

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining a complaint's adequacy, a court must disregard conclusory allegations and legal conclusions, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff has a plausible—as opposed to merely conceivable—claim for relief. *Id.* at 679.

A district court should dismiss a breach of contract claim if the terms of the contract are unambiguous.[3] *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 13–14 (2d Cir. 2019). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990) (citation omitted). In a contract action, the court's primary objective "is to give effect to the intent of the parties as revealed by the language of their agreement." *See, e.g.*, *In re Trs. Established under the Pooling & Serv. Agreements*, 375 F. Supp. 3d 441, 447 (S.D.N.Y. 2019) (citation omitted). No ambiguity exists where an alternative construction urged by one party would "strain [] the contract language beyond its reasonable and ordinary meaning," *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) (citation omitted), as a contract "should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." *Lipper Holdings, LLC v. Trident Holdings, LLC (In re Lipper Holdings, LLC)*, 766 N.Y.S.2d 561, 562 (N.Y. App. Div. 1st Dep't 2003) (internal citations omitted). *See also Condor Cap. Corp. v. CALS Inv'rs, LLC*, 118 N.Y.S.3d 29, 29–30 (N.Y. App. Div. 1st Dep't 2020) (dismissing breach of

---

[3] As noted in the Complaint, the Agreement and the DCL Guarantee "shall be governed by and construed in accordance with the laws of the State of New York." Compl. ¶ 20.

6

contract claim because enforcing the relevant payment term as written would not produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties); *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005) (quoting *Bethlehem Steel Co. v. Turner Constr. Co.*, 141 N.E.2d 590, 593 (N.Y. 1957)) ("[M]ere assertion by one that contract language means something to him, where it is otherwise clear, unequivocal and understandable when read in connection with the whole contract, is not in and of itself enough to raise a triable issue of fact.").

"Evidence outside the four corners of the document as to what was really intended but unstated or misstated is generally inadmissible to add to or vary the writing," and extrinsic evidence cannot "create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." *See W.W.W. Assocs., Inc.*, 566 N.E.2d at 642 (citations omitted). *See also In re Trs.*, 375 F. Supp. 3d at 448 ("[W]hen the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract[.]" (quoting *Howard v. Howard*, 740 N.Y.S.2d 71, 71 (N.Y. App. Div. 2d Dep't 2002)).

## <u>ARGUMENT</u>

### I.    Plaintiffs' Claims with Regard to Video-on-Demand Viewings Through MVPD Offerings Are Precluded by the Unambiguous Terms of the Agreement

Plaintiffs allege that Defendants have breached the Agreement by not compensating them for video-on-demand viewings by subscribers to MVPD platforms, such as DirectTV and Cox cable, and virtual MVPDs, such as YouTube TV and Hulu + Live. The thrust of this claim is that, according to Plaintiffs, when a subscriber views the Program in this fashion, that viewing is governed by Section 22(e), which relates to third-party subscription video on demand over which Plaintiffs would enjoy Joint Control and a different payment calculation. Compl. ¶¶ 50–62.

Plaintiffs' allegations, however, fail as a matter of the clear terms of the Agreement and depend on reading in terms that nowhere appear in the Agreement. As an initial matter, courts hold parties to their agreements, as they should, and will interpret contracts based solely on their plain meaning. *W.W.W. Assocs., Inc.*, 566 N.E.2d at 643; *Crowley v. VisionMaker, LLC*, 512 F. Supp. 2d 144, 152 (S.D.N.Y. 2007) (asserting the court "ordinarily looks only at the wording used by the drafters who presumably understood what they intended") (citation omitted). Moreover, because courts should also be "extremely reluctant to interpret an agreement as impliedly stating a term the parties have specifically neglected to include," the Court here should not read into the Agreement compensation for, or Joint Control over, viewings the parties expressly excluded. *In re Trs.*, 375 F. Supp. 3d at 449 (citation omitted); *see also Crowley*, 512 F. Supp. 2d at 153 (declining plaintiff's request to contort a term that, by its plain meaning, "clearly limits the scope of the Agreement").

Contrary to Plaintiffs' contention, Compl. ¶¶ 55–56, Defendants are not claiming (and have never claimed) that this type of video-on-demand viewing—where the MVPD or virtual MVPD makes available certain video-on-demand offerings (including of the Program) as part of their basic subscription as a cable (or virtual cable) provider—is itself a liner service. Rather, what Defendants have said, and what the Agreement clearly states, is that these types of video-on-demand services are simply not part of the compensation that Plaintiffs bargained for in the Agreement. Indeed, Section 22(e) clearly excludes from the definition of a Third-Party SVOD Platform any such offering, which the Plaintiffs claim govern this form of distribution:

> **For the avoidance of doubt,** a Third-Party SVOD Platform includes any SVOD platform operated by a third-party **separate and independently from such third-party's MVPD and/or virtual MVPD offering** and for which DCL receives license fees separate and apart from any affiliate revenue.

Agreement at 9. Accordingly, because the video on demand that Plaintiffs allege they have not received compensation for is not of a type "operated by a third-party separate and independently from such third-party's MVPD and/or virtual MVPD offering and for which DCL receives license fees separate and apart from an affiliate revenue," Plaintiffs are not entitled to any additional compensation on account of these viewings. Simply put, the only payment Plaintiffs are entitled to relating to the offerings of an MVPD or virtual MVPD is set forth in Section 16, and that section does not include any video-on-demand viewings that are part of the MVPD or virtual MVPD offering. It similarly follows that Plaintiffs are not entitled to any Joint Control over any such distribution, as Joint Control is limited to Third-Party SVOD Platforms, which clearly those are not.

Based on the allegations in the Complaint and the clear and unambiguous language of the Agreement, the Court should dismiss Plaintiffs' breach of contract claim predicated on this alleged breach. *See Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 530 F. Supp. 3d 447, 454–56 (S.D.N.Y. 2021) (The Court "may dismiss a breach of contract claim for failure to state a claim if the 'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach" and the Court should "not rewrite the agreement to relieve a sophisticated contracting party" like Plaintiffs "from terms that it later deems disadvantageous.") (internal citations omitted); *Metro. Life Ins. Co.*, 906 F.2d at 889 ("The parties' rights under an unambiguous contract should be fathomed from the terms expressed in the instrument itself rather than from extrinsic evidence as to terms that were not expressed or judicial views as to what terms might be preferable."); *Cap. Access Servs. Inc. v. Direct Source Seafood, LLC*, 2018 WL 3093967, at *4 (S.D.N.Y. June 22, 2018) (Broderick, J.), *aff'd*, 767 F. App'x 157 (2d Cir. 2019) (holding

9

that a "court's primary objective in interpreting a contract is to give effect to the intent of the parties as revealed by the language of their agreement") (citation modified).

The contract's plain terms likewise bar Plaintiffs' implied covenant of good faith and fair dealing allegations embedded in Count I. "[I]t bears emphasizing that the implied covenant can only impose an obligation consistent with other mutually agreed upon terms in the contract. . . . Nor can the implied covenant impose new duties outside the scope of the contract." *Benex LC v. First Data Merch. Servs. Corp.*, 2016 WL 1069657, at *3 (E.D.N.Y. Mar. 16, 2016) (citation modified) (citing *Reiss v. Fin. Performance Corp.*, 764 N.E.2d 958, 961 (N.Y. 2001) (declining to "imply a term where the circumstances surrounding the formation of the contract indicate that the parties, when the contract was made, must have foreseen the contingency at issue")). In *Jill Stuart Asia LLC v. LG Fashion Corp.*, this Court dismissed a breach of the covenant of fair dealing claim where plaintiffs based their cause of action "on the same operative facts as their breach of contract claims" and there existed "no basis in the record to delay decision on this motion until summary judgment." 2019 WL 4450631, at *2 (S.D.N.Y. Sept. 17, 2019) (Broderick, J.). "[T]here can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract." 23 Williston on Contracts § 63:22 (4th ed. 2021).

The Court should dismiss all of Plaintiffs' claims against Defendants with regard to the video-on-demand allegations detailed in Sections C, E and F of Plaintiffs' Complaint (¶¶ 50–62 and 81–88), as relevant to this claim, and as alleged in Counts I and II.

## II. Viewings of the Program on Discovery Apps Accessed Through A Third Party Are Covered by Section 17 For Which Plaintiffs Have Already Been Paid

Plaintiffs concede that if a consumer watches an episode of the Program on a Discovery app, such as HBO Max or Discovery+, Section 17 governs Defendants' payment obligations.

Compl. ¶¶ 64–65, 67–69.  That is because these Discovery apps are DCL Digital Platforms and Section 17 governs exploitation of the Program on a DCL Digital Platform.  But Plaintiffs attempt to rewrite the contract by alleging that when a consumer accesses these same Discovery apps through an MVPD like Cox Cable or DirecTV (or through a virtual MVPD), the viewing of the very same episode on the very same Discovery app somehow ceases to be on a DCL Digital Platform and should be governed by Section 22, and not Section 17.  Compl. ¶¶ 70, 84.  Plaintiffs' contention is nonsensical and fails as a matter of the clear terms in the Agreement.

First, there is nothing in the Agreement or the definition of a DCL Digital Platform that requires a consumer to gain access to a Discovery app only through Discovery in order to qualify as a DCL Digital Platform or that differentiates the amount of payment owed to Rowe based on how the app was accessed.  Nor would any such distinction make sense.  The fact remains, and the Complaint concedes, that the consumer is watching a video-on-demand episode of the Program by "accessing it through a Discovery app (such as Max)."  Compl. ¶ 70.  Moreover, there is nothing in Section 17 or anywhere else in the Agreement that differentiates how Discovery is to track, or Rowe is to be paid, based on how the consumer found their way to the app.  As the Complaint concedes, whether the consumer accesses the app through Discovery or through an MVPD offering, in the end the consumers are still accessing the Program on a DCL Digital Platform, because they are still accessing it on Discovery's app (e.g. Discovery+ or Max).  Compl. ¶ 29.  This situation is different from a Third-Party SVOD Platform (which the DCL Digital Platform definition distinguishes), because Discovery has not licensed the Program to a Third Party for viewing on the Third Party's video-on-demand service separate and independently from the Third

11

Party's MVPD or virtual MVPD offering. Rather, as the Complaint notes, the actual viewing of the Program is taking place on the Discovery app.[4]

Second, Plaintiffs' focus on whether the viewer is a customer of Discovery or of the Third Party is irrelevant. The underlying digital platform on which the Program resides remains at all times that of Discovery; it is only the path to get to that platform that may differ. Thus, in all respects, the platform on which the viewing is occurring is still one owned and operated by DCL. Also, it does not matter that, should the consumer stop paying their cable bill, they may lose access to the Discovery apps. That does not change the fact that the viewing takes place on a Discovery app any more than the same customer ceasing to pay their cable bill also loses access to Discovery's linear networks. No one could credibly claim, however, that Discovery does not own those linear networks simply because payment to watch them was made to the MVPD.

Similarly, a user needs an internet connection and web browser to facilitate access to HBO Max to watch an episode on a laptop or desktop. Following Plaintiffs' logic, the consumer accessing the episode on *discoveryplus.com* is first and foremost a customer of Spectrum, Verizon Fios, Optimum, or T-Mobile 5G Home Internet, and no viewing would ever be on a DCL Digital Platform under Section 17 because an internet provider supplying Wi-Fi or ethernet service ultimately controls whether the user can access *discoveryplus.com*. If the user stopped paying her internet bill, she would lose access to HBO Max, just like withholding payments from her cable company precludes her access to her preferred app. But any such analysis would be nonsensical, and it is axiomatic that the Court must avoid interpreting a contract in a manner that would be

---

[4] To this end, Discovery does not contend (and has never contended) that platforms of third parties are a DCL Digital Platform or that when Discovery licenses episodes of the Program for SVOD viewing to third parties, like Amazon or Netflix, those circumstances are governed by Section 17. Comp. ¶ 75. Rather, what Discovery does contend, and which the Agreement confirms, is that someone watching an episode of the Program on Discovery+ or HBO Max, or any other Discovery-owned digital platform, is watching it on a DCL Digital Platform regardless of how they came to be on that platform. Agreement at 6–7 (§ 17), 9–10 (§ 22(e)), 27 (§ 55(c)).

"absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties." *Landmark Ventures, Inc. v. Wave Sys. Corp.*, 2012 WL 3822624, at *3 (S.D.N.Y. Sept. 4, 2012), *aff'd*, 513 F. App'x 109 (2d Cir. 2013) (citation omitted); *c.f. Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 68–69 (2d Cir. 2005) (assessing "Plaintiffs' interpretation of the software agreement would produce some startling royalty-producing scenarios" and "ignores not only common sense but also the objective, rational, and reasonable expectations of authors and publishers entering into arms-length agreements" and holding summary judgment for defendant was appropriate).

Finally, Plaintiffs' reliance on the parties' prior agreements to inform the meaning of the Agreement is inappropriate and should not be considered. *See* Compl. ¶¶ 77–80. The Agreement speaks to the present situation and the consensus reached by the parties to govern their go forward relationship. Accordingly, reliance on parol evidence is unwarranted. *E.g.*, *GTS Indus. S.A. v. S/S "Havtjeld"*, 887 F. Supp. 531, 537 (S.D.N.Y. 1994), *aff'd sub nom. GTS Indus. S.A. v. S/S "Havtjeld"*, 68 F.3d 1531 (2d Cir. 1995) ("Since the verbiage in the body of the clause is clear and unambiguous, parol evidence is not warranted."). Similarly, the Court "is not at liberty to consider a [prior] agreement, which is directly addressed and altered by the [present agreement], to determine the scope of [Defendants'] obligations under the [present agreement]." *Clalit Health Servs. v. Israel Humanitarian Found.*, 2004 WL 2199505, at *8 (S.D.N.Y. Sept. 29, 2004). Where the parties have expressed their agreement in an unambiguous and integrated writing, "the parole evidence rule operates to exclude evidence of all prior and contemporaneous negotiations or agreements offered to contradict or modify the terms of their writing." *Stroll v. Epstein*, 818 F. Supp. 640, 645 (S.D.N.Y. 1993), *aff'd*, 9 F.3d 1537 (2d Cir. 1993) ("[Plaintiff] cannot introduce the June 1982 contract to create an ambiguity in the November 1984 contract.") (citation omitted).

13

Video-on-demand viewings of the Program on Discovery-branded apps facilitated by a third-party cable provider are viewed on an "Internet-delivered video-on-demand, direct-to-consumer service owned and operated by DCL" expressly contemplated in Section 17. Agreement at 27 (§ 55(c)). They are clearly not viewings through a Third-Party SVOD platform under Section 22(e), as they are not part of a platform operated by a third party separate and independently from such third party's MVPD and/or virtual MVPD offering and for which DCL receives license fees separate and apart from any affiliate revenue, as explained *supra*. Thus, either the viewings are on a DCL Digital Network, as the Agreement confirms and Discovery agrees and has been paying Plaintiffs, or they fall outside the compensation scheme of the Agreement altogether, like the video-on-demand viewings discussed in Section I, and Rowe has in fact been overcompensated.

The Court should dismiss all of Plaintiffs' claims against Defendants with regard to the allegations detailed in Sections D, E and F of Plaintiffs' Complaint (¶¶ 64–88), as relevant to this claim, and as alleged in Counts I and II.

### III.    Plaintiffs' Bald Allegations That Discovery Breached Section 16(e) Should Also Be Dismissed

Plaintiffs also seem to suggest that Discovery breached Section 16(e) of the Agreement by allegedly failing to account for linear ratings on virtual MVPDs. Compl. ¶¶ 31, 63. But the Complaint lacks any factual detail beyond conclusory allegations to make any such claim plausible and fails to meet even the most basic pleading requirements. *Iqbal*, 556 U.S. at 678. A complaint is inadequately pled "if it tenders naked assertions devoid of further factual enhancement." *Am. Signature, Inc. v. Moody's Invs. Servs., Inc.*, 698 F. Supp. 3d 628, 636 (S.D.N.Y. 2023) (citation modified) (quoting *Iqbal*, 556 U.S. at 678). "The Court . . . does not accept as true 'legal conclusions' contained in a complaint. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to state a claim upon which relief can be

14

granted." *Tillman v. N.Y.C. Dep't of Hum. Res. Admin.*, 2022 WL 874947, at *3 (S.D.N.Y. Mar. 24, 2022), *aff'd*, 2023 WL 2770218 (2d Cir. Apr. 4, 2023) (citation modified).

Moreover, there is nothing in the Agreement that requires Defendants to parse out and identify in the royalty statements to Plaintiffs relating to exploitation on a DCL Linear Service how much of those amounts relate to traditional MVPDs and how much from virtual MVPDs. Indeed, DCL Linear Service is defined to include "different distribution technologies (e.g., cable feed, DBS feed, digital stream used by virtual MVPDs, authenticated digital TV everywhere streams), or any form of 'live streaming.'" Agreement at 28 (§ 55(d)). In the absence of any requirement that Defendants split out the type of DCL Linear Service that accounts for the royalties paid to Rowe, and the absence of any specific allegations relating to this purported claim, all claims predicated on any alleged breach of Section 16(e) must also be dismissed.

## IV.    Plaintiffs' Claim for Breach of Guarantee Fails by Necessity

Because Discovery Talent has not defaulted on any of its obligations under the Agreement as detailed above, DCL cannot be in breach of the Guarantee. *See Anthracite Cap., Inc. v. MP-555 W. Fifth Mezzanine, LLC*, 2005 WL 1155418, at *7 (S.D.N.Y. May 17, 2005), *aff'd*, 165 F. App'x 875 (2d Cir. 2005) ("Because Anthracite's claim for breach of contract against MP-555 and MP-808 fails, its claim against Maguire for breach of contract fails since that claim is predicated on Maguire having improperly withheld payment as guarantor."); *WestLB AG v. BAC Fla. Bank*, 912 F. Supp. 2d 86, 94 (S.D.N.Y. 2012) ("Because the Complaint fails to state claims for breach of contract and waste against the Defendants, the specific performance and indemnification claims against Defendants must necessarily fail.").

## CONCLUSION

For or the reasons set forth above, Plaintiffs' Complaint should be dismissed in its entirety and with prejudice.

Dated: August 4, 2025                    Respectfully submitted,


                                         */s/ Theodore E. Tsekerides*

                                         WEIL, GOTSHAL & MANGES LLP
                                         Theodore E. Tsekerides
                                         Camilla Brandfield-Harvey
                                         Weil, Gotshal & Manges LLP
                                         767 Fifth Avenue
                                         New York, NY 10153
                                         Phone: (212) 310-8218
                                         Fax: (212) 310-8007
                                         theodore.tsekerides@weil.com
                                         camilla.brandfield-harvey@weil.com

                                         *Attorneys for Defendants Discovery*
                                         *Communications, LLC and Discovery Talent*
                                         *Services, LLC*

16

## CERTIFICATE OF COMPLIANCE

In accordance with Local Civil Rule 7.1(c), I hereby certify that the foregoing Memorandum of Law In Support of Defendants Discovery Communications, LLC and Discovery Talent Services, LLC's Motion to Dismiss is 4,943 words, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate, as counted by the Microsoft Word word-processing system on which it was prepared.  It therefore complies with the 8,750-word limit set by Local Civil Rule 7.1(c) and Rule 4(B) of the Court's Individual Rules & Practices in Civil Cases.

Dated: August 4, 2025                                  /s/ Theodore E. Tsekerides

                                                       Theodore E. Tsekerides

17