**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MICHAEL G. ROWE and LAB RAT
PRODUCTIONS, INC.,

                      Plaintiffs,

      - against -

DISCOVERY COMMUNICATIONS, LLC and
DISCOVERY TALENT SERVICES, LLC,

                      Defendants.

Case No.: 1:25-cv-04616-VSB-GWG

Oral Argument Requested

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
DISCOVERY COMMUNICATIONS, LLC AND
<u>DISCOVERY TALENT SERVICES, LLC'S MOTION TO DISMISS</u>**

WEIL, GOTSHAL & MANGES LLP
Theodore E. Tsekerides
Camilla Brandfield-Harvey
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Phone: (212) 310-8218
Fax: (212) 310-8007
theodore.tsekerides@weil.com
camilla.brandfield-harvey@weil.com

*Attorneys for Defendants Discovery
Communications, LLC and
Discovery Talent Services, LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.   Plaintiffs Are Not Entitled to Additional Compensation For Complimentary VOD
     Viewings By Linear Subscribers .................................................................................... 3

II.  Plaintiffs Are Properly Compensated Under Section 17 for Viewings That Occur on a
     Discovery App Regardless of How a Consumer Accesses the App ................................... 5

     A.   Plaintiffs fail to demonstrate how any viewing of the Program on a Discovery app
          falls outside of Section 17 ...................................................................................... 5

     B.   Section 22 Plainly Does Not Control .................................................................... 7

III. Plaintiffs Have Not Plausibly Alleged That Discovery Breached Section 16(e) ................ 9

IV.  Plaintiffs' Other Claims Fail For Lack of Breach ............................................................ 10

CONCLUSION .......................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**                                                                                                          **PAGE**

*Am. Signature, Inc. v. Moody's Invs. Servs., Inc.,*
   698 F. Supp. 3d 628 (S.D.N.Y. 2023)............................................................................ 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................................... 9

*Cerco Bridge Loans 6 LLC v. Schenker,*
   768 F. Supp. 3d 559 (S.D.N.Y. 2025).......................................................................... 10

*Grant Ent., Inc. v. Lee,*
   186 A.D.2d 66 (1st Dep't 1992)................................................................................... 2

*Greenfield v. Philles Recs., Inc.,*
   98 N.Y.2d 562 (2002) .................................................................................................. 2

*Hylan Ross, LLC v. 2582 Hylan Blvd. Fitness Grp., LLC,*
   206 A.D.3d 893 (2d Dep't 2022).................................................................................. 5

*In re E. End Bus Lines, Inc.,*
   2022 WL 1721262 (Bankr. E.D.N.Y. May 27, 2022) ................................................. 2

*Jill Stuart Asia LLC v. LG Fashion Corp.,*
   2019 WL 4450631 (S.D.N.Y. Sept. 17, 2019)............................................................ 10

*Malco Trading Corp. v. Mendelson-Silverman, Inc.,*
   240 A.D. 322 (1st Dep't), *aff'd*, 264 N.Y. 651 (1934)................................................. 2

*New York v. Town of Clarkstown,*
   95 F. Supp. 3d 660 (S.D.N.Y. 2015)............................................................................ 9

*Pletman v. Goldsoll,*
   264 A.D. 393 (1st Dept. 1942)..................................................................................... 2

*Spinelli v. Nat'l Football League,*
   96 F. Supp. 3d 81 (S.D.N.Y. 2015) ............................................................................. 2

*Stroll v. Epstein,*
   818 F. Supp. 640 (S.D.N.Y.), *aff'd*, 9 F.3d 1537 (2d Cir. 1993)................................ 4

*Taussig v. Clipper Grp., L.P.,*
   13 A.D.3d 166, 167 (1st Dep't 2004)........................................................................... 2

Defendants Discovery Communications, LLC ("DCL") and Discovery Talent Services, LLC (together, "Discovery" or "Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiffs' Complaint.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition (the "Opp.") relies on tortured and illogical interpretations of the Agreement in an effort to create an atmosphere of factual dispute and contractual ambiguity where none exist. Where a contract is unambiguous (as it is here), however, a party's different read of the contract is not sufficient to preclude dismissal. The Opposition also attempts to paint a picture that Rowe has been cheated for years under this heavily negotiated Agreement, even though the Complaint does nothing more than string together conclusory statements untethered from the actual terms of the Agreement. The facts are that Discovery has paid Rowe handsomely and continues to pay him to this day. But Rowe wants to change the terms of the Agreement and obtain more than he bargained to receive.

A succinct review of the issues in dispute, as reflected in the Complaint, confirms why the Complaint should be dismissed. At bottom, Plaintiffs allege: i) that video-on-demand viewings of the Program by cable subscribers as part of their cable package qualifies as an SVOD viewing; ii) that views of the Program on a Discovery app, but by a subscriber who gained access to the app through some method other than directly from Discovery, qualifies as an SVOD viewing; and iii) that Discovery is not paying Rowe for linear viewings that take place through an vMVPD instead of a traditional MVPD. However, nothing in the Opposition refutes that, as relates to the first two issues, the Agreement does not convert these viewings into SVOD (or AVOD) licenses for which Rowe is entitled to a greater payment than what he is already (admittedly) receiving. As it relates

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

to the third issue, Discovery is already paying Rowe for all linear airings, regardless of the type of MVPD.  In the end, Rowe is using litigation to try and rewrite the Agreement and obtain payment to which he is not entitled.

## ARGUMENT

The Court should dismiss the Complaint because the Agreement's clear, unambiguous language precludes Plaintiffs' claims.  *See Grant Ent., Inc. v. Lee*, 186 A.D.2d 66, 66 (1st Dep't 1992); *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 131–33 (S.D.N.Y. 2015) (dismissing claims and finding plaintiffs' "conclusory allegations as to the terms of the contracts allegedly breached by [the Associated Press] are contradicted by the plain language of their own AP Contributor Agreements").  It is also well-settled that "[t]he interpretation of an unambiguous contract is a question of law for the court, and the provisions of a contract addressing the rights of the parties will prevail over the allegations in a complaint."  *Taussig v. Clipper Grp., L.P.*, 13 A.D.3d 166, 167 (1st Dep't 2004).  Thus, "if the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity."  *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569–70 (2002).

That Plaintiffs have a different view of the contract does not create ambiguity.  *See Pletman v. Goldsoll*, 264 A.D. 393, 394 (1st Dep't 1942) ("Plaintiff's rights, if any, arise out of the contracts annexed to the pleading . . . and if there be a variance between the contracts and the allegations of the complaint, the contracts must control."); *Malco Trading Corp. v. Mendelson-Silverman, Inc.*, 240 A.D. 322, 325 (1st Dep't) (instructing courts must construe "the writing which passed between the parties . . . as it is found and not according to the legal effect which the pleader places upon it," finding plaintiff's self-serving conclusions "cannot improve the plaintiff's position," and reversing denial of motion to dismiss), *aff'd*, 264 N.Y. 651 (1934); *see also In re E. End Bus Lines, Inc.*, 2022 WL 1721262, at *5 (Bankr. E.D.N.Y. May 27, 2022) ("What matters is what the contract

2

says, not how the parties characterize the operative language.").  Based on this well-settled law, Discovery's Motion should be granted and the Complaint dismissed, with prejudice.

## I.      Plaintiffs Are Not Entitled to Additional Compensation For Complimentary VOD Viewings By Linear Subscribers

The video-on-demand at issue in this prong of the Complaint refers to episodes of the Program that Discovery may make available to an MVPD (along with episodes of other shows), as part of Discovery's affiliation agreements with the MVPD for linear distribution of Discovery's networks.  This form of video-on-demand is offered at no additional cost to MVPD or vMVPD subscribers; it is not offered "separate and independently" from the MVPD or vMVPD offerings, nor is it licensed "separate and independently" to MVPDs or vMVPDs (hereinafter "Complimentary VOD").  Verizon, DirecTV, or any other MVPD with an affiliation agreement with Discovery for distribution of Discovery's linear networks may make certain episodes of shows available to their customers as a free complement to their MVPD offerings (often through a VOD button on a remote).  Thus, this Complimentary VOD does not fall within the definition of SVOD found in Section 22(e).

Accordingly, Plaintiffs' efforts to shoehorn Complementary VOD into Section 22 and characterize it as SVOD do not hold up.  Section 22(e) applies to "*subscription* video on demand ('SVOD') platforms . . . operated by a third-party *separate and independently from such third-party's MVPD and/or virtual MVPD offering* and for which DCL receives *license fees separate and apart from any affiliate revenue.*"  *See* ECF No. 22-1 at 9 (emphasis added).  Complimentary VOD offerings provided to subscribers as part of linear offerings are outside the scope of Section 22(e) because they are not separate and independent from the MVPD offering and Discovery does not receive license fees for them separate and apart from affiliate revenue.  The plain reading of the definition unambiguously excludes these types of offerings from SVOD.  Significantly, this

3

definition also makes plain that Rowe is not entitled to receive any share of Discovery's affiliation agreement revenue with its MVPDs. This point is further underscored in Section 23 of the Agreement, which makes clear that Discovery has the unfettered right to exploit the Program in the context of its linear agreements with MVPDs—which would include the Complimentary VOD—without Rowe being entitled to any additional payment. *See* ECF No. 22-1 at 11. In sum, Plaintiffs' contention that they are entitled to compensation under Section 22 for this Complimentary VOD that is offered by MVPDs as part of their MVPD offerings to their customers, and for which DCL does not receive a separate license fee apart from affiliate revenue, is contrary to the Agreement.

Similarly unavailing are Plaintiffs' claims relating to Section 22(k), which covers AVOD. As an initial matter, contrary to Plaintiffs' assertion, Discovery has never conceded (tacitly or otherwise) that it breached Section 22(k). *See* Opp. 12. Moreover, that section simply has no application here as relates to Complimentary VOD because those offerings are not AVOD, just as they are not SVOD. Rather, as noted, Complimentary VOD is part of traditional linear offerings; an MVPD customer receives Complimentary VOD as part of the MVPD offering that comes with their MVPD subscription. And, there is also no allegation in the Complaint identifying any AVOD platform operated by a third party to whom Discovery allegedly licensed the Program.

*Finally*, Plaintiffs continue to point to "pre-Complaint positions," Opp. 7 n.1, in support of their contrary contract interpretation, but Discovery's interpretation of the Agreement—that Rowe is not entitled to compensation for Complimentary VOD offerings—has remained consistent since the time the Agreement was executed.[2] As Discovery has consistently noted, any Complimentary

---

[2] Plaintiffs likewise cannot rely on references to the parties' negotiations and prior agreements, all of which the Agreement explicitly "supersedes." ECF No. 22-1 at 2; *see Stroll v. Epstein*, 818 F. Supp. 640, 645 (S.D.N.Y.) ("The parole evidence rule operates to exclude evidence of all prior and contemporaneous negotiations or agreements offered to contradict or modify the terms" of an unambiguous writing.), *aff'd*, 9 F.3d 1537 (2d Cir. 1993).

4

VOD offerings do not entitle Rowe to separate compensation under the Agreement.  Rather, the point that has been consistently made is that any such inclusion is covered by the compensation Rowe already is entitled to receive under the terms of the Agreement under Section 16 and that Discovery has every right to use the Program for Complimentary VOD under its affiliation agreements with MVPDs for linear distribution.  For these reasons, Section 22(l)'s "catch-all" does nothing to support Plaintiffs' contention that Discovery is in breach of the Agreement because, simply put, Discovery is not exploiting the Program in a manner not covered by the Agreement.

**II.      Plaintiffs Are Properly Compensated Under Section 17 for Viewings That Occur on a Discovery App Regardless of How a Consumer Accesses the App**

Unhappy with the bargain they struck, Plaintiffs contort the unambiguous definition of DCL Digital Platform to imply a non-existent, additional layer of compensation for Rowe under Section 22(e) when consumers access Discovery's apps (like HBO Max and Discovery+) through a third party and watch the Program.  But viewings of the Program that reside on platforms owned and operated by Discovery are compensated under Section 17, not 22(e), and Plaintiffs' attempt to transform Discovery+ or HBO Max into a third-party platform when accessed through providers like Spectrum, DirecTV, or Verizon Fios fails as a matter of law.  *See Hylan Ross, LLC v. 2582 Hylan Blvd. Fitness Grp., LLC*, 206 A.D.3d 893, 895 (2d Dep't 2022) (affirming dismissal where plaintiff "improperly add[ed] a term and distort[ed] the meaning of the [] provision").

A.      *Plaintiffs fail to demonstrate how any viewing of the Program on a Discovery app falls outside of Section 17*

As explained in the Motion, viewings on Discovery apps that are accessed through a third party fit squarely within Section 17 as viewings on an "Internet-delivered video-on-demand, direct-to-consumer service owned and operated by DCL."  *See* ECF No. 22-1 at 27 (§ 55(c)).  Plaintiffs' attempts to argue otherwise are unconvincing.

*First*, Plaintiffs do not dispute that when a viewer is watching a program on these Discovery

5

apps, they are watching programming that is under Discovery's control. If someone accesses HBO Max to watch an episode of the Program, they are watching it on HBO Max. Even if the viewer subscribed to HBO Max through a third party (for example, by adding HBO Max to an Amazon Prime Video subscription), the viewer is still watching the Program residing on HBO Max, and Rowe has been compensated accordingly under Section 17. Such viewers are not watching content residing on a third party's digital distribution platform. An example of a third-party distribution platform, and which is actually set out as an example in the Agreement, would be a platform like Netflix or Disney Plus or any other "Third-Party SVOD Platform." *Id*. at 27–28. That definition tells us that if Discovery licensed episodes of the Program to those types of platforms, it would not be a DCL Digital Platform. But that is not what is at issue here, as there is no allegation that Discovery separately licensed the Program to any such third-party platform in violation of the Agreement. Rather, the allegation here is that because someone is accessing the Discovery app through some third party, somehow the episode of the Program is no longer on a DCL Digital Platform. The definition of a DCL Digital Platform precludes this allegation and is fatal to Plaintiffs' claim.

*Second*, and related, nothing in this definition speaks to, let alone requires, the viewer to gain access to the DCL Digital Platform directly from Discovery. While Plaintiffs rely heavily on the "shall not include a third-party digital distribution platform" language, Opp. 14, 17–18, such reliance is misplaced; indeed, Plaintiffs conflate Discovery apps accessed through a third party (e.g., HBO Max available through Amazon Prime Video) with standalone third-party platforms (e.g., Netflix). As discussed above, that language simply informs what defines a DCL Digital Platform but does not dictate how a DCL Digital Platform is accessed. Nothing about that definition, and nothing about the form of access, changes the fact that HBO Max and Discovery+

6

(the platforms on which the Program resides and on which Plaintiff concedes a viewer would be watching it), are Internet-delivered video-on-demand, direct-to-consumer services that are owned and operated by DCL.  In short, the nature of the platform did not change based on how it was accessed.

*Third*, that Discovery has no contract with viewers who access Discovery apps through third-party providers does not change the nature of these platforms.  Unlike a deal with Netflix where Discovery may license to Netflix episodes of the Program to appear and reside on Netflix's platform—which would be a third-party digital distribution platform subject to Section 22(e)—the Program here is appearing on HBO Max and Discovery+, regardless of who the viewer contracted with.  Plaintiffs' analogy to Nike selling individual shoes on Nike.com (direct-to-consumer) versus Macys.com (not direct-to-consumer) is inapt because it fails to reflect the actual pled facts.  The Complaint concedes that the customer has gained access to Discovery's app, but only through some other route.  *See* ECF No. 1 ("Compl.") ¶ 70 ("when a consumer watches a video-on-demand episode by accessing it through a Discovery app (such as Max) on a service provided by a third-party. . .").  In the end, the Program is still residing on Discovery's app.  Plaintiffs' Nike analogy is more akin to the Netflix situation discussed above where one of Discovery's assets, in this case the Program, could reside on HBO Max and also on Netflix's platform.  That is not the situation complained of here.  Here, the Program resides only on HBO Max and not on any third-party provider's platform, and Discovery alone can upload or take down any programming content without consulting the third party that provided access to the Discovery app.

B.      *Section 22 Plainly Does Not Control*

Plaintiffs' arguments that these facilitated viewings should be compensated under Section 22(e), 22(k), or 22(l) fail for similar reasons.  Besides the fact that the episodes of the Program

reside on Discovery's own platforms, the fact that a third party may have some involvement in facilitating access to the Discovery app does not bring that third party within the definition of a "Third-Party SVOD Platform" in Section 22(e).  As noted above, Netflix would be an example of a Third-Party SVOD Platform if Discovery were to license the Program for exploitation on Netflix's platform.  Plaintiffs are trying to contort and equate the facilitation of access to a Discovery app on which the Program resides to the licensing of the Program to a third party like Netflix, in which case the Program would reside on that third party's platform.  Such an interpretation does violence to the bargain struck as reflected in the Agreement and is contrary to the definitions in the Agreement.

Applying Section 22(e) to these viewings would create absurd results that the Court must avoid.  In particular, the Section 22(e) Joint Control rights Plaintiffs claim apply here would require Discovery to obtain Rowe's written consent to negotiate deals merely for providing access to Discovery's own applications (that contain all of Discovery's content, not just the Program) or remove the Program from HBO Max and Discovery+ entirely to avoid the exact arguments it is facing in this litigation.  Both of these scenarios are nonsensical and neither is contemplated or required under the Agreement.  Rather, Discovery is free to exploit the Program on its own digital platforms and pay Rowe according to Section 17, which it has been doing and will continue to do regardless of how a viewer gains access to the Discovery apps.[3]

Plaintiffs' Section 22(k) and 22(l) arguments fail for the simple reason that Discovery has not licensed the Program to any Third-Party AVOD Platforms or acted outside the Agreement.

---

[3] Plaintiffs' threadbare and vague allegations that Discovery has "been unable to account to Lab Rat or properly pay Lab Rat for years" and has "failed to properly account for, and remit, sums due the Plaintiffs under the Agreement, Compl. ¶¶ 27, 95, are not only overbroad and thus not specific to Section 17, but also "naked assertions devoid of further factual enhancement" that cannot survive dismissal.  *See, e.g., Am. Signature, Inc. v. Moody's Invs. Servs., Inc.*, 698 F. Supp. 3d 628, 636 (S.D.N.Y. 2023) (cleaned up).

And, to the extent Plaintiffs contend that a third party providing access to HBO Max or Discovery+ is a Third-Party AVOD Platform, any such argument would fail for the same reasons discussed *supra* related to Section 22(e): the exploitation remains on a DCL digital platform and is covered by Section 17.

### III.    Plaintiffs Have Not Plausibly Alleged That Discovery Breached Section 16(e)

The Opposition does nothing to explain the basis for any allegation that Discovery has not made payments for all linear distribution under Section 16(e).  *See* Opp. 25–26.  Other than identifying examples in the Complaint of vMVPDs, Plaintiffs do not provide anything other than bare conclusory statements that Discovery did not include these vMVPDs in its calculations. Putting aside that nothing in the Agreement requires Discovery to parse out how much of those amounts relate to traditional versus virtual MVPDs, Plaintiffs misstate their own Complaint. Nowhere do Plaintiffs "allege[] Discovery's accounting was deficient because 'the ratings service used by Discovery Talent does not measure linear exploitation' from such virtual MVPDs."  Opp. 26.  Paragraph 63 of the Complaint alleges only that Discovery Talent has violated Section 16(e) by failing "to find a method to evaluate viewership for purposes of calculating compensation to Lab Rat *if the ratings service used by Discovery Talent does not measure linear exploitation.*" Plaintiffs neither allege that the service used does not, in fact, measure linear exploitation, nor that Discovery failed to find a method to evaluate such exploitation.  Therefore, Plaintiffs' claims regarding breach of Section 16(e) fail to meet basic pleading requirements.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4]

---

[4] *New York v. Town of Clarkstown*, 95 F. Supp. 3d 660, 680–81 (S.D.N.Y. 2015) does not help Plaintiffs' cause. There, the court noted that plaintiffs alleged a claim "upon information and belief" that "movants, through their business operations, generated waste streams containing hazardous materials" and found movants were "in exclusive possession of information and documentation relevant to their operations and waste streams."  *Id.* at 681.  Here, Plaintiffs do not plead *anything* about the ratings service based on facts or information and belief.  Furthermore, whether the Agreement obligates Discovery to delineate royalties stemming from virtual MVPDs specifically—which it does not—is information available to both parties and not peculiarly within Discovery's possession.

## IV.    Plaintiffs' Other Claims Fail For Lack of Breach

Discovery has argued that the Court should dismiss Plaintiffs' breach of the covenant of good faith and fair dealing claim, which is based on the same operative facts as their breach of contract claim, just as this Court did in *Jill Stuart Asia LLC v. LG Fashion Corp.*, 2019 WL 4450631, at *2 (S.D.N.Y. Sept. 17, 2019) (Broderick, J.).  Because Plaintiffs' Opposition does not rebut Discovery's Motion relating to this claim, it should be dismissed.

Furthermore, Discovery has argued that it cannot be in breach of the Guarantee, because Discovery Talent has not defaulted on any of its obligations.  Plaintiffs have not pled facts showing a breach of contract, so they likewise have failed to show a default on the guarantee.  *See Cerco Bridge Loans 6 LLC v. Schenker*, 768 F. Supp. 3d 559, 579 (S.D.N.Y. 2025).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint in its entirety and with prejudice.

Dated: October 10, 2025        Respectfully submitted,


/s/ Theodore E. Tsekerides

WEIL, GOTSHAL & MANGES LLP
Theodore E. Tsekerides
Camilla Brandfield-Harvey
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Phone: (212) 310-8000
Fax: (212) 310-8007
theodore.tsekerides@weil.com
camilla.brandfield-harvey@weil.com

*Attorneys for Defendants Discovery Communications, LLC and Discovery Talent Services, LLC*

10

## CERTIFICATION OF COMPLIANCE WITH WORD-COUNT LIMITATION

I hereby certify that the word count of this Reply Memorandum of Law complies with the word-count limitation of Local Rule 7.1(c).  According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under L.R. 7.1(c) is 3,281 words.

/s/ Camilla Brandfield-Harvey
Camilla Brandfield-Harvey