UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL G. ROWE and LAB RAT PRODUCTIONS, INC., <br><br> Plaintiffs, <br><br> - against - <br><br> DISCOVERY COMMUNICATIONS, LLC and DISCOVERY TALENT SERVICES, LLC, <br><br> Defendants. | Case No.: 1:25-cv-04616-VSB-GWG <br><br><br> SUPPLEMENTAL COMPLAINT |

Plaintiffs Michael G. Rowe and Lab Rat Productions, Inc., by their counsel Scarola Zubatov Schaffzin PLLC, for their Supplemental Complaint, allege:

1.      Plaintiffs repeat and reallege each and every allegation of their Complaint as if fully set forth here.

2.      Plaintiffs use all terms defined in the Complaint in the same manner here.

3.      The Agreement provides at its ¶21 (titled "Joint Control of Certain Exploitation") that defendants and plaintiffs shall have joint control over certain exploitation of *Dirty Jobs* in a "Joint Control" provision that provides as follows:

In exercising Joint Control, the following shall be applicable:

i. Prior to entering into any agreements where Lab Rat's Joint Control right would apply, and promptly upon determining that the Program could be exploited in a way that would require Lab Rat's approval pursuant to its Joint Control rights, DCL will contact Lab Rat and (1) provide Lab Rat with a written summary of the proposed opportunity (including disclosure of any DCL-related parties involved), (2) provide Lab Rat with a reasonable opportunity to either approve or reject the opportunity as it relates to the Program, and (3) seek Lab Rat's written consent before entering into any written agreement regarding the opportunity. In the event that Lab Rat does not provide its written consent authorizing DCL to proceed with the opportunity as it relates to the Program, DCL may not proceed. Notwithstanding Lab Rat's Joint Control right, Lab Rat does not have the right to lead, directly or indirectly, or participate in the underlying third-party negotiations directly with the third-party without DCL's permission.

ii. Notwithstanding Lab Rat's Joint Control Right, DCL shall have the right to engage in preliminary negotiations regarding the exploitation of various product services and offerings for which Lab Rat has Joint Control.

iii. For purposes of this Paragraph, DCL shall provide notice of all matters to which Lab Rat has Joint Control to the address set forth above in the notices for Lab Rat.

4.      In or around early April 2024, defendants approached plaintiffs about a possible agreement with Netflix for exploitation that had the following terms, as summarized by plaintiffs to defendants in an email on April 3, 2024:

Thanks for the call yesterday morning.

I spoke to Mike and told him about the Netflix proposal and that you need a quick reply.  We are fine with the proposed deal based on the 50/50 split like we did on the Hulu deal.  Just to summarize, below is what I understand is the deal and what I have relayed to Mike:

The deal is for 4 seasons of DJ/109 episodes total (Season 1 is 34, Seasons 2 is 29, Seasons 3 is 25 and Season 4 is 26).

It is a two year deal.  Seasons 1 and 2 will air first for a year and then Seasons 3 and 4 are expected to be the next year.  Start date is <u>June 1</u> for availability but Netflix has 4 months (<u>until October 1</u>) to schedule the shows to air.  The 12 month clock starts when scheduled.  Netflix has an option to move up all or part of Seasons 3 and/or 4, but that moves up the clock for the accelerated episode(s)/season(s).  Thus no more than 12 months of airing for each season.

Territories are US; UK and Ireland; English speaking Africa; India and Australia and New Zealand.

Fee is $45K per episode of DJ per year (so $4.905 M total). Discovery is not sure how it will be divided between territories.  Currently allocating 50% US and 50% to the rest, but that can change (most likely weighing more to the US and UK).

There are three other series in the package with Netflix.  Those are Deadliest Catch, Gold Rush and Alaskan Bush People.  Discovery believes those three other series are all comparable to DJ since they are all big hits.  (I'm not familiar with the third but obviously know about the other two.) The other series in the package are all at the same rate of $45K per ep.

Please just let me know the payment schedule for the Netflix deal (as well as Hulu since it did not come in on the Q4 report) so we know when to anticipate receiving the

2

funds.  I like to let our accounting people know when to generally expect payments.

As before, non-precedential and all rights reserved.

Have a great rest of your week.

5.      Defendants agreed to those terms as stated.

6.      Defendants also agreed to the following two-year payment schedule in further writings between the parties on December 12, 2024:

Sorry for the delay. Due to how close we are to year-end we anticipate paying in January. Can we also propose the below payment schedule for the Netflix deal? We think it will help simplify the process and also get you payment for each batch of Netflix seasons earlier:

1.  Payment for Netflix S1 and S2: $1,305,000. Please send an invoice dated January 1, 2025, and we will pay within 30 days.
2.  Payment for Netflix S3 and S4: $1,147,500. Please send an invoice dated January 1, 2026, and we will pay within 30 days.

7.      The foregoing terms were the only and the specific terms on which plaintiffs agreed to the exploitation of *Dirty Jobs* in an arrangement of the kind defendants had proposed for a contract with Netflix for exploitation of *Dirty Jobs*.

8.      Defendants were required to obtain the agreement of plaintiffs before entering into an agreement with Netflix as described in these writings for the proposed exploitation of *Dirty Jobs* in question.

9.      Defendants did enter into an agreement with Netflix for such exploitation of *Dirty Jobs*.

10.     Plaintiffs performed all that was required of them under that agreement and in accordance with the Agreement generally.

11.     Plaintiffs' agreement with respect to the Netflix exploitation was and is only as stated in the agreement alleged herein.

3

12.    Defendants did not seek or receive agreement from plaintiffs to change or amend the agreement with respect to the Netflix exploitation alleged herein.

13.    Defendants have advised plaintiffs that they amended their own agreement with Netflix to remove the second year of exploitation of *Dirty Jobs*.

14.    Defendants have told plaintiffs that they would not pay the $1,147,500 owed to plaintiffs under plaintiffs' and defendants' agreement as alleged herein for exploitation of *Dirty Jobs* and they have not paid that amount.

15.    Defendants are not entitled to change or amend their agreement with plaintiffs as alleged herein for exploitation of *Dirty Jobs*.

FIRST SUPPLEMENTAL CLAIM FOR RELIEF — BREACH OF CONTRACT/GUARANTEE

16.    Plaintiffs repeat and reallege each and every allegation above as if fully set forth here.

17.    By reason of the foregoing, defendants have breached their agreement with plaintiffs with respect to the Netflix exploitation as alleged herein and plaintiffs have been damaged as alleged, for non-payment, in the amount of $1,147,500, and are entitled to recover that amount from defendants.

18.    For the reasons alleged in the Complaint, plaintiffs are entitled to recover from DCL under the Guarantee executed by DCL the amounts to be recovered on this claim.

19.    For the reasons alleged in the Complaint, plaintiffs are entitled to recover their costs of suit, including without limitation, reasonable attorneys' fees.

WHEREFORE, plaintiffs demand Judgment on this Supplemental Complaint, in addition to their demands in the Complaint, in their favor and against defendants, on the First Supplemental Claim for Relief for damages in the amount of $1,147,500 plus interest and their costs of suit,

including without limitation, reasonable attorneys' fees, together with the Court granting such

other and further relief for plaintiffs and against each of defendants as the Court deems just and

proper.

Dated:  February 18, 2026
      New York, NY

              SCAROLA ZUBATOV SCHAFFZIN PLLC


By       /s/ Richard J.J. Scarola
            Richard J.J. Scarola
            Alexander Zubatov
*Attorneys for Plaintiffs*
620 Fifth Avenue, 2nd Fl.
New York, NY  10020
Tel.:  (212) 757-0007